AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

for the

District of New Mexico

DEC 16 2021

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Motorola model XT2113-1PP wireless telephone seized from Jason BEGAY's vehicle

)
)
)
)
)
)

Case No.  21-MR-1750

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) and (b)(1)(A) | Possession with Intent to Distribute a Mixture and Substance Containing 50 Grams or more of Methamphetamine |
| 18 U.S.C. § 924(c) | Carrying a firearm in furtherance of drug distribution |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Travis Kosir, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12-16-2021

City and state:  Farmington, NM

_____
*Judge's signature*

B. Paul Briones, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

IN THE MATTER OF THE SEARCH OF
ACCOUNTS

Motorola model XT2113-1PP wireless
telephone seized from Jason BEGAY's
vehicle.

Cr. No. _2/-MR-/75 0_

AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Travis Kosir, being duly sworn, state as follows:

INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules

of Criminal Procedure for a search warrant authorizing the examination of property—an electronic

device—which is currently in law enforcement possession, and the extraction from that property

of electronically stored information described in Attachment B. This affidavit is made in support

of an application for a search warrant for a Motorola model XT2113-1PP wireless telephone

(referred to herein as "Target Device") recovered from the vehicle of Jason E. BEGAY, (referred

to herein as "BEGAY"), year of birth 1981 on or about November 14, 2021.

2.      I am a Special Agent with the United States Department of Justice, Federal Bureau

of Investigation ("FBI") and have been employed as such since March 2016. I am currently

assigned to the Albuquerque Division of the FBI, Farmington Resident Agency. I have primary

investigative responsibility for investigating crimes that occur in Indian Country, including violent

crimes such as murder, robbery, arson, aggravated assault, and sexual assault. As a Federal Agent,

I am authorized to investigate violations of the laws of the United States and have authority to

execute arrest and search warrants issued under the authority of the United States. I have

experience executing and examining data from multiple search warrants on electronic devices and am familiar with the type of data. I have training and experience conducting investigations involving the use of electronic devices, websites, social media, and other forms of electronic communication, including the identification and use of IP addresses in determining user identities, geographic locations, and linked accounts.

3.      This affidavit is based upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties. Throughout this affidavit, reference will be made to law enforcement officers. Law enforcement officers are those federal, state, and local law enforcement officers who have directly participated in this investigation.

4.      The Target Device to be searched is described in the following paragraphs and in Attachment A. Based on the facts set forth in this affidavit, there is probable cause to believe violations of Title 18 U.S.C. § 924(c) carrying a firearm in furtherance of drug distribution, and Title 21 U.S.C. § 841(a)(1) and (b)(1)(A) possession with the intent to distribute a controlled substance; to wit, 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, were committed by BEGAY, and that evidence of such crimes may be contained in the Target Device.

5.      This affidavit is intended to show there is probable cause for the requested search warrant and does not set forth all of my knowledge about this matter. The statements in this affidavit are based on my personal knowledge, information that I have received from other law enforcement personnel, and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that

2

I believe are sufficient to establish probable cause to believe that evidence of the listed offenses is located in the Target Device.

IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.      The Target Device to be searched is a Motorola model XT2113-1PP wireless telephone. The Target Device was originally recovered by the Navajo Nation Department of Criminal Investigations ("NNDCI") from the vehicle of BEGAY on or about November 14, 2021. The Target Device is currently in FBI custody stored in secured evidence storage located at the FBI Farmington Resident Agency in Farmington, NM.

7.      The applied-for warrant would authorize the forensic examination of the Target Device for the purpose of identifying electronically stored data particularly described in Attachment B.

PROBABLE CAUSE

8.      On or about November 14, 2021, the Farmington Resident Agency of the FBI was notified that the Navajo Police Department ("NPD") had responded to a 911 dispatch call regarding an individual slumped over the steering wheel of a vehicle parked in vicinity of mile post 14 on route N-36 just north of Morgan Lake in San Juan County, New Mexico, within the exterior boundaries of the Navajo Nation Indian Reservation. Upon arrival, officers observed one occupant sitting in the driver seat of the vehicle along with a black handgun located on the front passenger seat. Officers made contact with the driver, later identified as BEGAY, however, BEGAY fled the scene resulting in Navajo Police Department ("NPD") initiating a pursuit of the vehicle. The pursuit led to the south side of Shiprock, NM to the southwest subdivision housing area where the vehicle became stuck in soft dirt near a property fence. Pursuing officers issued commands to BEGAY, the sole occupant of the vehicle, who did not comply. BEGAY then exited

3

the vehicle and ran approximately one hundred yards before being apprehended by NPD officers. Officers identified BEGAY, who was known to officers from multiple previous encounters involving firearms and drugs.

9.      While observing BEGAY's vehicle at the location it stopped, NPD officers observed a black pistol in plain view on the driver seat floorboard of the vehicle, identified as a dark green Chevrolet Tahoe bearing New Mexico license plate ANYY44. NPD officers also observed an open tool bag sitting open on the driver seat containing multiple plastic bags with what appeared to be a white crystal-like substance in them which the officers recognized as likely methamphetamine based on their training and experience.

10.      BEGAY was taken into custody by NPD officers who conducted a search of BEGAY's person and located a soft ball sized plastic bag containing a white crystal-like substance in BEGAY's right front pocket. The substance from the plastic bag in BEGAY's right front pocket was field tested and resulted in a positive test for methamphetamine. NPD officers also seized the black pistol from the driver seat floorboard which was identified as a 9mm SCCY model CPX-1 pistol bearing serial number 243884.

11.      A search of BEGAY's vehicle conducted by Navajo Nation Department of Criminal Investigations ("NNDCI") located eight plastic bags containing a white crystal-like substance in the tool bag initially observed by NPD officers on the driver seat. The weight of the eight plastic bags ranged from approximately 3.2 ounces to 16.1 ounces, totaling approximately 109.4 ounces, or 6.8 pounds, for all eight bags. The white crystal-like substance located in all eight plastic bags was field tested and all eight field tests resulted in positive tests for the presence of methamphetamine.

4

12.     NNDCI also located a loaded black 9mm Beretta model 92FS pistol bearing serial number E23193Z in the glove box of the vehicle, a black 12 Gauge Chiappa model AR-12S magnum shotgun bearing serial number 120SA12P1284 in the cargo area, a Gamo Bone model 1300 pellet rifle bearing serial number 04-1C-128459-14 in the cargo area, and numerous unspent 12 gauge and .40 caliber pistol ammunition rounds throughout the vehicle. A firearm suppressor was located in the pouch on the back side of the driver seat in addition to a night vision device on the front passenger floorboard.

13.     During execution of the search, NNDCI seized the Target Device and secured it along with the rest of the seized evidence without searching the Target Device itself. All of the evidence seized during the execution of the search on BEGAY's vehicle was initially submitted to the NNDCI evidence room and subsequently transferred into FBI custody where it currently remains secured. Investigators noted the Target Device to be a smart phone style device with a black glass screen front and a purple-colored backing bearing the Motorola company emblem. The Target Device was stamped with model number XT-2113-1PP. No other uniquely identifying markings or numbers were observed on the Target Device.

14.     On or about November 14, 2021, your affiant received criminal history results for BEGAY which noted BEGAY had been arrested in June 1999 for third degree felony aggravated assault and fourth degree felony aggravated assault by Farmington, NM Police Department. Further review of New Mexico District Court records revealed BEGAY was convicted of fourth degree felony aggravated assault in April 2001 in violation of New Mexico statute 30-03-02(A).

15.     The initial contact with BEGAY, the ensuing pursuit, and final location where BEGAY was taken into NPD custody are all within the exterior boundaries of the Navajo Nation Indian Reservation.

16.     Through my training and experience, I know that narcotics traffickers often maintain one or more wireless or "smart" telephone ("devices") which they utilize to further their narcotics trafficking. Narcotics traffickers use these devices to communicate operational directives and information concerning the conduct of the organization's illegal activities to other organization members, including their suppliers, distributors and other co-conspirators. I know based on my training and experience that timely communication of information between organizational members is critical to the overall success of an organization's or individual drug trafficker's illegal activities. The critical nature of the information is derived form the necessity of the organization or drug trafficker to provide instructions for the importation, storage, transportation, and distribution of narcotics.

17.     I further know from my training and experience that a cache of information including dialed, received, or missed calls and text messages sent, received, or placed in draft status, can be found on these devices. I know that the identities and telephone numbers of other participants in the narcotics trafficking activity are maintained in the contact lists of these devices. In my experience, narcotics traffickers also use these devices to take and store photographs or video recordings of themselves with their co-conspirators and with contraband including narcotics, currency, and firearms. Narcotics traffickers also use the GPS or location enabled applications of these devices to store information related to the financial transactions that occur during the course of the narcotics trafficking, such as drug ledgers and financial accounts and transactions. In my experience, the devices used by narcotics traffickers often contain evidence relating to their narcotics trafficking activities including, but not limited to, contact lists, lists of recent call activity, stored text and voice mail messages, photographs and video recordings, GPS and location information, and financial accounts and records.

6

18.     I further know that some devices utilize subscriber identity module ("SIM") cards. A SIM card is a ship that is used to authenticate a device to a network. The SIM card generally contains subscriber information, authentication information, and may contain contact and encryption information. The portability of SIM cards in some devices allows a user to easily change devices, while maintaining the same telephone number, by removing the card form one device and inserting in into another. While SIM cards may have the capability to store some of the evidence described above, the storage capacity of devices tends to far exceed that of SIM cards. What information is stored on the SIM card, on the device, or is stored in both locations varies depending on the user-defined settings on the device and the memory capacity of the SIM card. Accordingly, information pertaining to drug trafficking activity may be located on both the SIM card itself, as well as the device in which the SIM card was inserted.

19.     Based on my training and experience, I know that drug traffickers often have in their possession firearms and ammunition to protect themselves, their drugs, and the proceeds derived from the distribution of drugs from individuals who seek to rob them or from competing drug traffickers.

20.     Based on the information provided in this affidavit, your affiant believes probable cause exists that evidence including, but not limited to, contact lists, lists of recent call activity, stored text and voice mail messages, photographs and video recordings, GPS and location information, and financial accounts and records may be located in Target Device described in attachment A.

21.     The search warrant is for the purpose of searching the Target Device described in attachment A for items described in attachment B.

TECHNICAL TERMS

22.     Based on my training and experience, I use the following technical terms to convey

the following meanings:

a.   Wireless telephone: A wireless telephone (or mobile telephone, or cellular

telephone) is a handheld wireless device used for voice and data communication

through radio signals. These telephones send signals through networks of

transmitter/receivers, enabling communication with other wireless telephones or

traditional "land line" telephones. A wireless telephone usually contains a "call

log," which records the telephone number, date, and time of calls made to and

from the phone. In addition to enabling voice communications, wireless

telephones offer a broad range of capabilities. These capabilities include: storing

names and phone numbers in electronic "address books;" sending, receiving, and

storing text messages and e-mail; taking, sending, receiving, and storing still

photographs and moving video; storing and playing back audio files; storing

dates, appointments, and other information on personal calendars; and accessing

and downloading information from the Internet. Wireless telephones may also

include global positioning system ("GPS") technology for determining the

location of the device.

b.   Digital camera: A digital camera is a camera that records pictures as digital

picture files, rather than by using photographic film. Digital cameras use a variety

of fixed and removable storage media to store their recorded images. Images can

usually be retrieved by connecting the camera to a computer or by connecting the

8

removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.   GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d.   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control

a range of IP addresses. Some computers have static—that is, long-term—IP
addresses, while other computers have dynamic—that is, frequently changed—IP
addresses.

    e.   Internet: The Internet is a global network of computers and other electronic
devices that communicate with each other. Due to the structure of the Internet,
connections between devices on the Internet often cross state and international
borders, even when the devices communicating with each other are in the same
state.

23.    Based on my training, experience, and research from consulting the
manufacturer's advertisements and product technical specifications I know that the Target
Device has capabilities that allow it to serve as a wireless telephone, digital camera, GPS
navigation device, and is capable of connecting to the internet. In my training and experience,
examining data stored on devices of this type can uncover, among other things, evidence that
reveals or suggests who possessed or used the device, where the user was located at specific
times, and communications between different parties over various communication platforms.

<u>ELECTRONIC STORAGE AND FORENSIC ANALYSIS</u>

24.    Based on my knowledge, training, and experience, I know that electronic devices
can store information for long periods of time. Similarly, things that have been viewed via the
Internet are typically stored for some period of time on the device. This information can
sometimes be recovered with forensics tools.

25.    *Forensic evidence.* As further described in Attachment B, this application seeks
permission to locate not only electronically stored information that might serve as direct

evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

27.     *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

<u>AUTHORIZATION REQUEST</u>

28.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

29.     Based on the facts set forth in this affidavit, there is probable cause to believe violations of Title 18 U.S.C. § 924(c) carrying a firearm in furtherance of drug distribution, and Title 21 U.S.C. § 841(a)(1) and (b)(1)(A) possession with the intent to distribute a controlled substance; to wit, 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, were committed by BEGAY, and that evidence of such crimes may be contained in the Target Device.

12

30.     Assistant United States Attorney Novaline Wilson, District of New Mexico, reviewed this affidavit for legal sufficiency.

31.     I swear that this information is true and correct to the best of my knowledge and belief.

Travis Kosir
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me this ___/6___ day of December 2021

B. Paul Briones
United States Magistrate Judge

13

**ATTACHMENT A**

**Property to Be Searched**

The property to be searched is a Motorola model XT2113-1PP wireless telephone, a "smart" phone style device with a black glass screen front and a purple-colored backing bearing the Motorola company emblem stamped with model number XT-2113-1PP (referred to herein as "Target Device"). The Target Device is currently located in secured storage at the FBI Farmington Resident Agency in Farmington, NM.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

**Particular Things to be Seized**

1.      All records, in whatever format, on the Target Device described in Attachment A that relate to violations of United States Code Title 18 U.S.C. § 924(c) carrying a firearm in furtherance of drug distribution, and Title 21 U.S.C. § 841(a)(1) and (b)(1)(A) possession with the intent to distribute a controlled substance; to wit, 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine and involve BEGAY including:

a.  Digital, cellular, direct connect, and/or other phone numbers, names, addresses, and other identifying information of customers, distributors, sources of supply and other associates of the user of the Target Device;

b.  Digital, cellular, direct connect, and/or other phone numbers dialed from, which contacted, or which are otherwise stored on, the Target Device, along with the date and time each such communication occurred;

c.  Text message logs and text messages whether sent from, to, or drafted on, the Target Device, along with the date and time each such communication occurred;

d.  The content of voice mail messages stored on the Target Device, along with the date and time each such communication occurred;

e.  Photographs or video recordings;

f.  Information relating to the schedule, whereabouts, or travel of the user of the Target Device;

g.  Information relating to other methods of communications utilized by the user of
the Target Device and stored on the Target Device;

h.  Bank records, checks, credit card bills, account information and other financial
records;

i.  Evidence of user attribution showing who used or owned the Device at the time
the things described in this warrant were created, edited, or deleted, such as logs,
phonebooks, saved usernames and passwords, documents, and browsing history,
and;

j.  any information related to firearms or other weapons.

2.      As used above, the terms "records" and "information" include all of the foregoing
items of evidence in whatever form and by whatever means they may have been created or
stored, including any form of computer or electronic storage (such as flash memory or other
media that can store data) and any photographic form.

3.      This warrant authorizes a review of electronic storage media and electronically
stored information seized or copied pursuant to this warrant in order to locate evidence, fruits,
and instrumentalities described in this warrant. The review of this electronic data may be
conducted by any government personnel assisting in the investigation, who may include, in
addition to law enforcement officers and agents, attorneys for the government, attorney support
staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the
seized or copied electronic data to the custody and control of attorneys for the government and
their support staff for their independent review.